IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JAMES DICKINSON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-029-LMB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| ———————————————————— | ) | |

Currently pending before the Court is James Dickinson's Petition for Review (Docket No. 1). Dickinson seeks review to set aside the final decision of Respondent denying Dickinson's claim for Disability Insurance Benefits under Titles II and XVI of the Social Security Act. He brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c).

Having carefully reviewed the record and being otherwise fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

James Dickinson ("Petitioner" or "Claimant") protectively filed for disability insurance benefits under Title II of the Social Security Act (the "Act"), and supplemental security income benefits under Title XVI of the Act, on December 17, 2003. (AR 17). Petitioner alleges, in both

**MEMORANDUM DECISION AND ORDER - 1**

applications, a combination of impairments that began on October 1, 2000,[1] in the form of

chronic back pain, degenerative joint disease of the right hip with a femoral head fracture as well

as a preexisting shotgun wound to the right thigh, with buckshot remaining lodged in his leg.

(AR 20–22).  The Commissioner denied Petitioner's application initially, and again after

reconsideration, after which Petitioner filed a timely request for a hearing before an

Administrative Law Judge.  (AR 17).  ALJ John C. Arkoosh held a hearing on November 29,

2006, in Boise, ID, where the Petitioner was represented by attorney Andrea Cardon.  (AR 17).

Vocational Expert, Beth Cunningham, also appeared and testified at the hearing.  (AR 17).

On May 25, 2007, the ALJ denied Petitioner's claim based on a finding that during the

period of the claimed disability, the ALJ determined Petitioner was "not disabled under sections

216(i) and 223(d) of the Social Security Act."  (AR 27).

Petitioner requested the Appeals Council review the ALJ's decision.  The Appeals

Council denied review on November 19, 2007, making the AJL's decision the final decision of

the Commissioner of Social Security.  (AR 6–9).

Having exhausted his administrative remedies, Petitioner timely filed the instant action.

*Petition for Review* (Docket No. 1).  Petitioner requests that the ALJ's decision be reversed or, in

the alternative, that this matter be remanded for an ALJ hearing *de novo*.  *Id.* at p. 20.

## II.

### BACKGROUND

At the time of the hearing before the ALJ, Petitioner was forty-seven years old.  (AR 26).

---

[1]  At the hearing before the ALJ, Petitioner amended his onset date to March 1, 2004.
(AR 17).

**MEMORANDUM DECISION AND ORDER  - 2**

He had ten years of formal education, including a GED, and the ability to communicate, fluently, in English. (AR 26). Further, Petitioner had work experience as a truck driver, a general manager of a manufacturing plant and a cook. (AR 80–87). Petitioner has stated that due to his disability, he has been unable to perform any of those past jobs. (AR 268).

The ALJ determined that Petitioner did, in fact, have severe impairments in his back and right hip, resulting from chronic back pain and degenerative joint disease. (AR 20). However, the ALJ concluded that, in denying his application, Petitioner had not met his burden of proving that he has been under a disability as defined by the Social Security Act during the period under consideration. (AR 26–27).

### III.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon the Petitioner to establish entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 404.1520, 416.920 (2005).

If the Commissioner's decision is supported by substantial evidence and based upon proper legal standards, then it will be upheld. 42 U.S.C. § 405(g) (2000); *Matney ex rel. Matney v. Sullivan*, 921 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of fact by the ALJ are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual determinations, they must be upheld, even in the face of conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374

**MEMORANDUM DECISION AND ORDER  - 3**

(9th Cir. 1979).

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). This standard requires "more than a scintilla," but "less than a preponderance," *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). When the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will only be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying

**MEMORANDUM DECISION AND ORDER  - 4**

the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citations omitted).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether the finding is based on application of proper legal standards.

## IV.

## DISCUSSION

When evaluating evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  "The burden of proof is on claimant as to steps one through four[, but] as to step five, the burden shifts to [the] Commissioner." *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999).

## A.    **Sequential Process**

The first step of the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, Petitioner is not disabled, and benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ concluded that Petitioner has not performed substantial gainful activity since March 1, 2004.  (AR 19).

The second step requires the ALJ to determine whether the claimant's impairment or combination of impairments are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  If the answer is in the

**MEMORANDUM DECISION AND ORDER  - 5**

negative, disability benefits are denied.  20 C.F.R. § 404.1520(c).  Here, the ALJ found that Petitioner has a severe combination of three impairments: a back disorder, arthritis and a fracture in the right hip and a noncurrent shotgun injury, with shrapnel remaining in his right thigh.  (AR 17).

At the third step, the ALJ must determine whether the claimant's impairments meet or equal a listed impairment under the 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If so, the claimant is disabled, and entitled to disability insurance benefits.  20 C.F.R. § 404.1520(d).  "If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (*citing* 20 C.F.R. § 404.1520(d)).  In the instant action, the ALJ concluded that Petitioner did not have an impairment or combination of impairments that meets or medically equals, one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (AR 20–21).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is "not disabled" and thus not entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(e).  "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step." *Lounsbury*, 468 F.3d at 1114.  In this regard, the ALJ concluded that Petitioner retains "the residual functional capacity to lift and/or carry 20 pounds occasionally, 10 pounds frequently, and 5 pounds or less, constantly."  (AR 22).  The ALJ further found that Petitioner can "stand up to one hour at a time and/or walk short distances

**MEMORANDUM DECISION AND ORDER  - 6**

for two to three hours total in a 8-hour workday," and "can sit about 6 hours in an 8-hour workday, with the opportunity to alternate position as needed to relieve pain and discomfort, as well as an opportunity to lie down if need [sic] during routine breaks and lunch periods." (AR 23–26). The ALJ concluded, however, that Petitioner is unable to perform any past relevant work considering the jobs "require greater exertional demands than the claimant's current residual function capacity . . . ." (AR 26). Accordingly, the claim could not be resolved at step four, and the ALJ's evaluation proceeded to the fifth and final step of the process. *See* 20 C.F.R. § 404.1520(e) (AR 20–27).

When the claim reaches step five, the ALJ considers if the claimant is able to do any other work. 20 C.F.R. § 404.1520(f)(1). On the fifth step, the burden shifts to the ALJ. *Id.* If the ALJ finds that claimant cannot work, then the claimant is "disabled" and entitled to disability insurance benefits. *Id.* If the ALJ determines that the claimant can work, the ALJ must then establish that there are a significant number of jobs in the national economy that claimant can do in his or her condition. *Id.* "If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits." *Lounsburry*, 468 F.3d at 1114. The ALJ can meet this burden two ways. *Id.* First, the ALJ can solicit the testimony of a vocational expert; and second, the ALJ can reference the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Id.*

In the instant case, the ALJ, by the testimony of a vocational expert, determined that Petitioner is able to "perform the requirements of representative occupations such as the unskilled, sedentary occupations as a washroom attendant at a sugar beet factory . . ., a telemarketer . . ., and a dispatcher. (AR 27). Accordingly, the ALJ found Petitioner not disabled

**MEMORANDUM DECISION AND ORDER  - 7**

as defined in the Social Security Act.  (AR 27).

**B.**     **Analysis**

Petitioner challenges the Commissioner's final determination on several grounds.  First, Petitioner claims that the ALJ committed reversible error at steps two, three and four of the sequential process.  *Petitioner's Brief*, pp. 9–14 (Docket No. 17).  Second, Petitioner claims the ALJ committed reversible error in discounting Petitioner's own allegations of pain without sufficient rational.  *Id.* at pp. 14–16.  Third, Petitioner argues that the ALJ committed reversible error "by not addressing treating physician Dr. Frizzell's opinion that the claimant should not be working clear back in September 4, 2001."  *Id.* at 16–17.  Fourth, Petitioner asserts reversible error in the ALJ's improper reliance on the opinion of Dr. Koenig.  *Id.* at 17–18.  Fifth, Petitioner argues reversible error because the ALJ allegedly did "not even consider" Petitioner's medications impact on his ability to work.  *Id.*  Sixth, Petitioner claims reversible error in the ALJ's residual functional capacity determination.  *Id.* at 19–20.  Seventh, Petitioner argues reversible error in the ALJ's "failure to define the Petitioner's mental abilities."  *Id* at 20.  Eight, Petitioner argues reversible error in the alleged failure of the ALJ to include subjective pain testimony by Petitioner in the hypothetical questioning of the vocational expert.  *Id.*  Finally, Petitioner concludes by arguing "the ALJ has based his decision on erroneous facts, has not substantiated his conclusions with clear and convincing evidence, and with disregard for the record as a whole."  *Id.*

In response, Respondent claims that the ALJ's determination is supported by substantial evidence in the record.  *Respondent's Brief*, pp. 6–15 (Docket No. 21).  Respondent directly refutes all of Petitioner's allegations.  Specifically, Respondent claims that Petitioner did not

**MEMORANDUM DECISION AND ORDER  - 8**

establish that he met his burden of showing he was disabled under the act. *Id.* Respondent also asserts that the ALJ properly weighed all of the opinions of Petitioner as well as Petitioner's treating physicians, giving adequate reasons for rejecting any findings. *Id.* at pp. 11–13. Finally, Respondent states that the ALJ "applied correct legal standards and cited substantial evidence in finding Petitioner not disabled." *Id.* at p. 15.

1.    <u>**Step Two: Determination of Medically Severe Impairment(s).**</u>

At step two of the sequential process, the ALJ was required to determine whether Petitioner's impairments were severe. The ALJ determined that Petitioner's impairments were, in fact, severe as to "Chronic back pain, . . . *degenerative joint disease of the right hip* with right femoral head fracture, and a history of a shotgun wound to the right thigh in October 1976 with retained buckshot." (AR 20 (emphasis added)). Petitioner argues that the ALJ erred in not making findings regarding Petitioner's osteoarthritis. *Petitioner's Brief*, p. 9 (Docket No. 17).

Respondent correctly points out, however, that "osteoarthritis is also known as degenerative joint disease and degenerative arthritis." *Respondent's Brief*, p. 6 (*citing* Dorland's Illustrated Medical Dictionary, 1333 (30th ed. 2003)) (Docket No. 25). Likewise, it is clear that the ALJ did consider Petitioner's osteoarthritis. Accordingly, the ALJ's findings at step two of the sequential Process are affirmed.

2.    <u>**Step Three: Listing Requirements Under the Regulations.**</u>

At step three of the sequential process, the ALJ was required to determine whether Petitioner's impairments meet or equal an impairment listed in the regulations. Petitioner argues that the ALJ's determinations on step three of the sequential process was in error. *Petitioner's Brief*, p. 10–13 (Docket No. 17). Specifically, Petitioner reasons that his hip dysfunction, his

**MEMORANDUM DECISION AND ORDER  - 9**

back disorder and his osteoarthritis are all listed impairments under 20 C.F.R. Pt. 404, Subpt. P, App. 1.[2]  *Id.*  Finally, Petitioner argues that the combination of all those impairments, in addition to the Petitioner's non-severe adjustment disorder with depressed mood, are sufficient to render Petitioner disabled.  *Id.* at 12.

Respondent argues that Petitioner failed to prove all of the requisite Listings requirements under the regulations.  *Respondent's Brief*, p. 7 (Docket No. 25).  Respondent contends that the ALJ adequately "summarized and considered the medical evidence [on the record in determining] that Petitioner did not meet or equal the Listings [of §§] 1.02 and 1.04." *Id.*  Further, Respondent states that the "Listing [under §] 14.09 for inflammatory arthritis contains the same ambulatory requirements as Listing 1.02," which the ALJ concluded were not met.  *Id.*  Likewise, Respondent concludes that Petitioner was properly classified as not disabled under §§ 1.02, 1.04 and 14.09 of the regulations.  *Id.*  Finally, Respondent dismisses the assertion that the ALJ did not consider all of Petitioner's ailments, including any mental disability, in combination when determining Petitioner's residual functional capacity.  *Id.* at 8–9. Respondent reasons that the conclusion of the ALJ is consistent with all of the evidence on the record, including any evidence of mental impairment.  *Id.*

### a.    Disability classification under Major Dysfunction of a Joint, § 1.02.

Section 1.02 outlines the conditions required to establish disorders of a joint.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02.  In order to qualify for benefits, Petitioner's hip pain must

---

[2]  Petitioner claims that his hip dysfunction meets or medically equals the Listing for Major dysfunction of a joint pursuant to § 1.02 of the appendix, his back disorder meets or medically equals the Listing for Disorders of the spine under § 1.04, and his osteoarthritis meets or medically equals the Listing for Inflammatory arthritis under § 14.09.

**MEMORANDUM DECISION AND ORDER  - 10**

qualify as a "Major dysfunction of a joint,"

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A.  Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively . . . .

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02.  Under the Listings, the inability to ambulate

effectively is defined as:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., Pt. 404, Subpt. P.App. 1, § 1.00(B)(2)(b)(l).  Finally, under the Listings, the ALJ shall

find the claimant able to ambulate effectively when:

> [An] individual[ is] capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Pt. 404, Subpt. P.App. 1, § 1.00(B)(2)(b)(2).

The ALJ found that Petitioner's hip pain constituted a severe impairment, but did not

meet or medically equal a Listed impairment.  (AR 20–22).  Specifically, the ALJ found that

Petitioner had "bilateral degenerative changes in the hips, much more marked on the right than

**MEMORANDUM DECISION AND ORDER  - 11**

on the left, and a fracture originating in the articular surface, laterally, or the right femoral head and extending into and possibly all the way through the femoral head central portion."  (AR 21). However, the ALJ cited the June 10, 2004, examination by Dr. Sant that showed Petitioner had a "normal range of motion to the upper extremities . . .," and "normal strength."  (AR 22).  The ALJ also noted Petitioner's testimony that he could walk, operate foot controls, drive and push and/or pull with his upper extremities, as well as his ability to carry out activities of daily living. (AR 24).  Finally, the ALJ noted his extensive review of Petitioner's file, mentioning Dr. Koenig's extensive records and those of Dr. Sant, and how their conclusions were in accord with his findings and determination.

In reviewing the records independently, substantial evidence supports the ALJ's determination that Petitioner's hip pain did not equal the Listing requirement of § 1.02. Particularly, there is nothing in the record indicating that Petitioner's malady "interfere[d] *very seriously* with the individual's ability to independently initiate, sustain, or complete activities of daily living."  *See* 20 C.F.R., Pt. 404, Subpt. P.App. 1, § 1.00(B)(2)(b)(l) (emphasis added). Moreover, Petitioner's own testimony supports the conclusion of the ALJ that Petitioner can ambulate effectively.  Accordingly, the finding of no disability under § 1.02 is affirmed.

**b.      Disability classification under Disorders of the Spine, § 1.04.**

Listing 1.04 requires: a disorder "of the spine, resulting in compromise of a nerve root or the spinal cord."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.  Paragraph A of this Listing requires that Petitioner show: (1) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain;" (2) "limitation of motion of the spine;" (3) "motor loss accompanied by sensory or reflex loss;" and (4) "if there is involvement of the lower back,

**MEMORANDUM DECISION AND ORDER  - 12**

positive straight-leg raising test (sitting and supine)." *Id.* at ¶ A.

For Petitioner to be classified under this Listing, he must show that "his impairment . . . meet[s] all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521 (1990). Petitioner argues that his impairment met or equaled this listing because there is evidence of "nerve root impingement with pain, limited motion, weakness, reflex loss and . . . [an] inability to ambulate effectively." Petitioner's Brief. p. 11–12 (Docket No. 17). Petitioner concedes that there is no evidence of a positive straight-leg test, as required by the Listing. *Id.* However, Petitioner attributes this lack of evidence to reversible error on the part of the ALJ. *Id.* In particular, Petitioner argues that the ALJ's failure to submit new evidence in the form of a medical expert was erroneous. *Id.*

In step three, it is the Petitioner's burden of proof to show that he meets all criteria of a Listing and is therefore *per se* disabled. In determining that Petitioner has not met all of the criteria of a Listing, the ALJ is not, as a matter of law, required to state why a claimant failed to satisfy every different section of a Listing. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990). Rather, the ALJ must adequately state the "foundations on which the ultimate conclusions are based." *Id.* Requiring more unduly burdens the social security disability process. *Id.* (*citing Stephens v. Heckler*, 766 F.2d 284, 297 (7th Cir.1985)).

In reviewing all of the evidence in the record, the Court notes that some items favor establishing that Petitioner's impairment, in fact, meet the Listing 1.04 requirements. However, there is significant contrary evidence that supports the ALJ's conclusion that Petitioner's impairment failed to meet or equal the criteria in the Listing.

With regard to the evidence, the Court notes the panoptic and consistent record. Of

**MEMORANDUM DECISION AND ORDER  - 13**

relevant note, Dr. Tyler Frizzell, in his operative and post-operative reports, states that Petitioner

had been relieved of all nerve root compression, and ambulates without assistance.[3]  (AR

121–24).  Dr. Rodde Cox, performing follow-up exams for Dr. Frizzell, performed several

straight leg raising tests on Petitioner with negative results.  (AR 127, 129, 137).  Dr. Cox also

found that Petitioner had a full range of motion.  (AR 137).  Finally, independent analysis

provided by Dr. Ward Dickey supports the conclusion of the ALJ, noting Petitioner's "restrictions

would not preclude all work activity."  (AR 209).

　　　With all of this in mind, and because it is undisputed that the Court may not substitute its

judgment for that of the ALJ, the finding of no disability under § 1.04 is affirmed.

### c.　　Disability classification without medical equivalence opinion.

　　　Citing Social Security Ruling 96-6p, Petitioner argues that it was reversible error for the

ALJ to fail to "submit new evidence and ask for a medical equivalence opinion for either listing

1.02 or 1.04 . . . ."  *Petitioner's Brief*, p. 12 (Docket No. 17).  Petitioner seems to be arguing that

the lack of evidence supporting his classification of disability under the Listing was in error

because the ALJ failed to provide new evidence.

　　　Social Security Ruling 96-6p (1996) provides that an ALJ must obtain an updated medical

opinion from a medical expert if, and only if, the ALJ believes that "the symptoms, signs, and

laboratory findings reported in the case record suggest that a judgment of equivalence may be

reasonable; or [w]hen additional medical evidence is received that in the opinion of the [ALJ]

---

[3]  The Court notes that the opinions of Dr. Frizzell are not addressed in the ALJ's written determination.  Likewise, the weight, if any, assigned to that opinion is also not addressed. Petitioner contends this is reversible error, while Respondent claims harmless error.  *See infra* IV.B.6.b.

**MEMORANDUM DECISION AND ORDER  - 14**

may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." This authority accords an ALJ broad discretion in determining whether to consult a medical expert. There is nothing in the record, or Petitioner's Brief, to indicate that the ALJ erred by deciding that a consultation in this case was not necessary. The findings of the ALJ were based on a thorough analysis of the medical evidence, including reports and notes from numerous medical professionals. This evidence was adequate and supported the ALJ's decision.

Accordingly, the determination of the Commissioner will not be overturned on this gound.

### d.    Determination in light of ALJ's Failure to Consider a Listing.

Petitioner argues, briefly, that the ALJ was in error in not considering Listing § 14.09. *Petitioner's Brief*, p. 12 (Docket No. 17). In sum, Petitioner argues that due to his "significant osteoarthritis and need[ for] a hip replacement, with joint pain/deformity in two major joints (hips) and the inability to ambulate effectively . . .," creates a legal requirement that the ALJ consider Listing § 14.09. *Id*.

When denying benefits, the responsibilities of the ALJ are clear. Under 42 U.S.C. 405(b)(1), in his decision, the ALJ is required to discuss the evidence and, upon a finding of non-disability, explain why Petitioner is not disabled under the Listings. Further, the ALJ has a responsibility to develop the record and interpret and consider the evidence. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Similarly, at step three of the sequential process, the ALJ is generally required to elaborate what disability Listings he considered in the process, and state reasons why Petitioner's claim did not meet or equal the contemplated Listing. "However, in interpreting the evidence and developing the record, the ALJ does not need to

**MEMORANDUM DECISION AND ORDER  - 15**

discuss every piece of evidence." *Id.*; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).  Likewise, if the ALJ improperly fails to consider a Listing that may avail Petitioner to benefits, that "error [is] harmless if [the] findings he made elsewhere conclusively negate [Petitioner's] claim under [the] Listing [that was not considered] . . . ."  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (*citing Fischer-Ross v. Barnhard*, 431 F.3d 729, 733 (10th Cir. 2005)).

**(1)      Listing for Inflammatory Arthritis, § 14.09**

In arguing legal error by the ALJ's failure to not expressly consider § 14.09, Petitioner does not make reference to what specific Listing, under § 14.09, he alleges he satisfied.  To meet the requirements for Listing § 14.09, Petitioner must show:

> A. Persistent inflammation or persistent deformity of:
>
> 1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
> 2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).
>
> or [meet the requirements of another listing, which is not relevant in this case].[4]

20 C.F.R. Pt. 404, Sbpt. P, App. 1 § 14.09.  Petitioner points out that he "needs a hip replacement, [and has] joint paint/deformity in two major joints (hips) and the inability to ambulate effectively . . . ."  *Petitioner's Brief*, p. 12 (Docket No. 17).  The meaning of an "inability to ambulate effectively" is the same for all sections of the Listings, and is recited above.  *See supra* Disability classification under Major Dysfunction of a Joint, § 1.02, pp. 11–12.

---

[4]  Petitioner makes no reference to organs/body systems, severe fatigue, fever, malaise, involuntary weight loss, ankylosing spondylitis or other spondyloarthropathies.  Accordingly, those Listing requirements are irrelevant.

**MEMORANDUM DECISION AND ORDER  - 16**

As previously mentioned, the ALJ determined that Petitioner could, in fact, ambulate effectively. *Id.* This determination precludes Petitioner from meeting the requirements of Listing § 14.09.

Thus, despite the fact that the ALJ should have considered § 14.09, his failure to do so does not constitute reversible error. Section 14.09 require that Petitioner show an "inability to ambulate effectively." In considering §§ 1.02 and 1.04, the ALJ unambiguously detailed his finding that Petitioner can, in fact, ambulate effectively under the regulations.[5] Accordingly, while the ALJ's failure to consider § 14.09, was in error, it was harmless. Harmless error does not and will not warrant reversal of the ALJ's decision. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhard*, 400 F.3d 676, 679 (9th Cir. 2005).

### e.      Disability classification from a Combination of Impairments.

Petitioner next contends that the ALJ failed to give sufficient weight to the combined impact of all of his health problems, including a non-severe adjustment disorder with depressed mood and the side effects of Petitioner's medication. *Petitioner's Brief*, p. 12–14 (Docket No. 17). The ALJ is required to consider the aggregate effects of claimant's impairments, including impairments that, alone, do not meet the Listings requirements. 42 U.S.C. § 1382c(a)(3)(G), 20 C.F.R. § 404.1523, *see also Nguyen v. Chater*, 100 F.3d 1462, 1466 n. 3 (9th Cir. 1996) ("[W]here claimant suffers both physical and mental impairments both must be considered together in evaluating their effects.").

---

[5] "The claimant is able to ambulate effectively to independently initiate, sustain, or complete activities. The claimant is able to walk at a reasonable pace on rough or uneven surfaces, carry out routine activities, travel to and from work, perform part-time work activity, and take care of his personal and daily needs. He does not require the use of assistive devices such as a walker, tow canes or two crutches in order to ambulate effectively." (AR 22).

MEMORANDUM DECISION AND ORDER  - 17

First of all, the evidence shows only slight fatigue as a side effect to Petitioner's medications. It is apparent from the record that the ALJ did consider Petitioner's medicinal side effects. The ALJ explicitly states that he considered "[t]he type, dosage, effectiveness, and side effect of any medication the claimant takes or has taken to alleviate pain or other symptoms." (AR 23).

With regard to Petitioner's alleged adjustment disorder with depressed mood, the ALJ specifically noted that Petitioner had a Global Assessment of Functioning (GAF) of 74, suggesting a "slight impairment" at best. (AR 20). The ALJ further stated that he had considered all of Petitioner's symptoms together, along with the objective medical evidence, and "[a]ny other factors concerning the claimant's functional limitations and restrictions due to pain *or other symptoms*." (AR 17–23) (emphasis added).

Considering the opinion of Dr. Seidenfeld, whom Petitioner claims supports his argument that he has an "inability to sustain functioning," Petitioner's claimed affirmation is without merit. Dr. Seidenfeld made several conclusions, noting that that Petitioner "does not seem to have a significant depressive problem," "has excellent arithmetic skills," "can concentrate and focus his attention very effectively . . .," "show[s] good insight and judgement," "[has] very adequate abstract reasoning abilities," "[has the ability] to cook a meal and take care of himself and maintain his own home without much difficulty," "can follow simple and complex instructions," "is able to adapt to change," and "[is] capable of managing his own funds." (AR 199–203). Dr. Seidenfeld's statement that Petitioner's "condition will worsen if his physical pains are not reduced and they continue to wear on him," does not render the ALJ's findings erroneous. Contrary to the argument of Petitioner, weighing Dr. Seidenfeld's opinion as a

**MEMORANDUM DECISION AND ORDER  - 18**

whole, as well as the generalized and prospective nature of the allegedly supportive statement, the ALJ finds support in Dr. Seidenfeld's record.

Overall, it is apparent that the ALJ considered Petitioner's medications, mental disorders, arthritis and back injury together, including scrutinizing MRIs, x-rays, Petitioner's GAF and the medical record in total.  (AR 19–26).  This assessment, combined with the weight accorded to the evidence and opinions on record, as well as the burden on Petitioner at step three, support the conclusions made by the ALJ.  Thus, the final determination of the Commissioner will not be reversed for ostensibly not considering Petitioner's impairments collectively.

### 3.   Step Four: The determination of Petitioner's Residual Functional Capacity.

Petitioner maintains that the ALJ's determination of Petitioner's Residual Functional Capacity ("RFC"), at step four of the sequential process, was in error.  *Petitioner's Brief*, p. 12–13 (Docket No. 17).  Specifically, Petitioner reasons that the ALJ's failure to "consider all of the Petitioner's impairments, including impairments that are not severe as required by [law]," renders "the ALJ's RFC finding . . . not supported by substantial competent evidence."

To the contrary, as previously determined, the ALJ did, in fact, consider all of Petitioner's collective impairments, including those considered "not severe."  Moreover, the decision of the ALJ accurately considers the total capacity of Petitioner to engage in normal daily activities.  While Petitioner is correct to point out that "a hip replacement [] has been recommended by two physicians, as well as a back surgery" and the associated pain impact of his RFC, he is incorrect to conclude that his "impairments were not considered in combination or as a whole."  *Petitioner's Brief*, p. 13 (Docket No. 17).

In considering the entire record, the ALJ concluded that Petitioner had significant

**MEMORANDUM DECISION AND ORDER  - 19**

limitations due to his combined ailments.  (AR 22).  Evidencing this conclusion, the ALJ found

that Petitioner "is unable to perform any past relevant work," and "[d]ue to the claimant's

chronic pain, he would be limited to jobs not requiring constant attention and concentration to

tasks."  (AR 22, 26).  There is competent evidence in the record to support the ALJ's RFC

conclusion, and the evidence considered is reflected in his decision.[6]

   **4.**      **Step Five: Determination of Jobs Petitioner Can Perform.**

   Petitioner disputes the ALJ's conclusion that Petitioner can perform a full range of

sedentary work.  *Petitioner's Brief*, p. 19–20 (Docket No. 17).  Petitioner challenges this

determination on three grounds.  First, Petitioner argues, in light of the opinions of Dr. Sant and

Dr. Koenig that Petitioner should avoid prolonged sitting or standing, the ALJ is precluded from

determining that Petitioner can perform sedentary work.  *Id.*  Second, Petitioner argues that the

ALJ failed to take into account Petitioner's diminished mental abilities in determining that he

can "perform the basic mental demands of unskilled . . . and sedentary work."  *Id.*  Third,

Petitioner argues that "[p]ain was not included in any of the ALJ's hypotheticals [to the

vocational expert] which is reversible error."  *Id.*  Further, in his reply brief, Petitioner raises

another question, stating "the [vocation expert] did not state how much the jobs listed would be

eroded due to [] functional limitations, which is reversible error."  *Petitioner's Reply Brief*, p. 3

(Docket No. 25).

   First, Petitioner's arguments regarding the opinions of Dr. Sant and Dr. Koenig, his

arguments regarding Petitioner's mental capacity and erosion of functional limitations are

--------------------------------------------------------------------------------

   [6] The Court's determination, like that of the ALJ, specifically excludes the opinions of
Dr. Tyler Frizzell.  The Commissioner's determination in light of the exclusion of this evidence
is discussed below.  *See infra* Part IV. B. 6.b.

**MEMORANDUM DECISION AND ORDER  - 20**

wholly irrelevant.  *See* 20 C.F.R. § 404.1520.  The opinions of Petitioner's doctors are given

their due credit at steps two, three and four of the sequential process.[7]  Likewise, the Court has

already determined that the ALJ properly considered all of Petitioner's conditions, including his

mental abilities and his functional limitations, in making Petitioner's RFC rating.  "At the fifth

and last step, [the ALJ] consider[s the] assessment of [Petitioner's] residual functional capacity

and [Petitioner's] age, education, and work experience to see if [he] can make an adjustment to

other work."  *Id*.  Thus, the Court is left only to consider Petitioner's contention that the ALJ

improperly failed to include Petitioner's subjective pain testimony in his hypothetical questions

to the vocational expert.

 At the final step of the sequential process, the ALJ must establish that there are a

"significant number of jobs in the national economy that claimant can do."  *Lounsburry v.

Barnhard*, 468 F.3d 1111, 1114 (9th Cir. 2006); 42 U.S.C. § 423(d)(2)A).  "There are two ways

for the [ALJ] to meet the burden of showing that there is other work in "significant numbers" in

the national economy that claimant can do: (1) by the testimony of a vocational expert [in

response to ALJ's hypothetical quetions], or (2) by reference to the Medical-Vocational

Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *Id*.  In questioning the vocational expert, the

ALJ is required to include Petitioner's subjective complaints of pain unless there is substantial

evidence to reject such claims of pain.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir

1984).  However, there are several exceptions to this requirement.  Notably, the hypothetical can

omit subjective pain allegations when the ALJ makes findings that reject the opinion and set

forth reasons for omitting the claims of pain.  *See Baucus v. Secretary of HHS*, 717 F.2d 443,

---

[7] The weight given to Dr. Koenig's opinion is discussed below.  *See infra* Part IV. B. 6.a.

**MEMORANDUM DECISION AND ORDER  - 21**

447 n. 5 (8th Cir. 1983); *Stubbs v. Matthews*, 544 F.2d 1251, 1256–57 (5th Cir. 1977).

Moreover, cross-examination questions of the vocational expert can cure any flaws. *See*

*Williams v. Shalala*, 997 F.2d 1494, 1499 (D.C. Cir. 1993).

It is undisputed that the ALJ properly chose to utilize Beth Cunningham, a vocational

expert, for this purpose.  In questioning Ms. Cunningham, the ALJ asked her to answer

hypothetical questions in light of specific statements made by Dr. Koenig, Dr. Sant and the

ALJ's RFC determination, which all took into account Petitioner's own pain testimony.  (AR

295–97).  Further, the ALJ rejected much of Petitioner's subjective pain testimony.[8]  (AR 24).

Finally, Petitioner was represented by counsel at all phases of the administrative process, but

cross-examined the vocational expert only about sick days, and employee efficiency.

Thus, not only did the ALJ require the vocational expert to consider Petitioner's pain

testimony, but he also properly discounted the credibility of Petitioner, making the questioning

of Ms. Cunningham absolutely appropriate under the regulations.  Accordingly, error is not

found at this step of the sequential process.

### 5.      Credibility of Petitioner

Petitioner argues that the ALJ failed to properly support his finding that Petitioner was not

credible.  *Petitioner's Brief*, pp. 14–16 (Docket No. 17).  Resolution of conflicts in the testimony

and of credibility questions is a function solely of the ALJ.  *Russell v. Bowen*, 856 F.2d 81, 83

(9th Cir. 1988).  Furthermore, "if the ALJ's credibility finding is supported by substantial

evidence in the record," the Court "may not engage in second-guessing."  *Thomas v. Barnhart*,

---

[8]  The weight given to Petitioner's pain testimony and credibility is discussed below. *See infra* Part IV.B.5.

**MEMORANDUM DECISION AND ORDER  - 22**

278 F.3d 947, 959 (9th Cir. 2002).  The ALJ is in the best position to make such credibility

determinations and, for this reason, the ALJ's credibility determinations are entitled to great

weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  Indeed, "[c]redibility

determinations are the province of the ALJ."  *Fair*, 885 F.2d at 604.

The ALJ determined that Petitioner was apparently credible regarding the presence of

some degree of discomfort and his inability to do some types of work.  Likewise, in the view of

the ALJ, there was sufficient and reliable evidence to show that Petitioner has a "medically

determinable impairment" that could produce the pain and other symptoms alleged by Petitioner.

(AR 24).  However, the ALJ also concluded that the same evidence does not support the

Petitioner's "statements concerning the intensity, persistence and limiting effects of the[]

symptoms . . . ."  (AR 24).

Where, as here, the ALJ finds the claimant's pain testimony to be not entirely credible,

the Ninth Circuit has held that "the ALJ may reject the claimant's testimony regarding the

severity of [his] symptoms only if the ALJ makes specific findings stating clear and convincing

reasons for doing so," and he "must state specifically which symptom testimony is not credible

and what facts in the record lead to that conclusion."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

Cir. 1996); s*ee also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Specifically, in

determining whether the claimant's subjective testimony regarding the severity of his symptoms

is credible, "the ALJ may consider claimant's reputation for truthfulness, inconsistencies either

in claimant's testimony or between his testimony and his conduct, claimant's daily activities,

claimant's work record, and testimony from physicians and third parties concerning the nature,

severity and effect of the symptoms of which claimant complains."  *Light v. Soc. Sec. Admin.*,

119 F.3d 789, 791 (9th Cir. 1997).  In evaluating this case, the ALJ appropriately relied on (1)

the testimony of Dr. Koenig concerning the nature, severity, and effect of Petitioner's symptoms,

and (2) the inconsistencies in Petitioner's testimony regarding his physical limitations and his

conduct, work and daily activities.

      The ALJ found that Petitioner was inconsistent in how his limitations effected his daily

living.  Petitioner testified that he engaged in normal activities of daily living, including

preparing meals, bathing, house cleaning, laundry, shopping, and doing minor repairs and

maintenance around the home and to his vehicle.  (AR 88–92, 196–97, 280–81).

      After carefully reviewing the record, the Court concludes that the ALJ properly rejected

Petitioner's credibility regarding the intensity and persistence of such pain and other symptoms,

and his inability to do any type of work.  In the Court's view, the record contains substantial

evidence to support the conclusions of the ALJ.  The ALJ properly evaluated Petitioner's

testimony and provided clear and convincing reasons for finding his testimony not entirely

credible.

      Where, as here, the ALJ has made specific findings justifying a decision to discount and

reject certain allegations made by Petitioner regarding symptoms and their functional effect on

daily activities, and those findings are supported by substantial evidence in the record, as the

Court concludes they are in this action, the Court's role is not to second-guess that decision.

*Thomas*, 278 F.3d at 959.  The ALJ's findings to reject Petitioner's credibility are sufficiently

specific to allow the Court to conclude that the ALJ's decision is based on permissible grounds

and that the ALJ did not arbitrarily discredit Petitioner's testimony.  *See Bunnell*, 947 F.2d at

345.  Accordingly, the Court concludes that the ALJ's decision to reject certain aspects of

**MEMORANDUM DECISION AND ORDER  - 24**

Petitioner's subjective testimony concerning his limitations is not erroneous and should not be disturbed on appeal.

### 6. Adequacy of the ALJ's Determination in Light of the Opinions of Dr. Michael Koenig and Dr. Tyler Frizzell.

Dr. Michael Koenig treated Petitioner from August, 2003, through October, 2004, for general care. (AR 180–89). Dr. Starkey referred Petitioner to Dr. Tyler Frizzell for a lumbar discectomy on a herniated disc, and Dr. Frizzell saw Petitioner from November, 1999, to September, 2001 for follow-up treatment. (AR 142–56). It is undisputed that both Dr. Koenig and Dr. Frizzell are Petitioner's treating physicians. *See Respondent's Brief*, pp. 12–14 (Docket No. 21). Petitioner takes issue with the ALJ's interpretation of the evidence provided by Dr. Koenig. *Id.* at 17–19. Specifically, Petitioner contends that since the ALJ gave Dr. Koenig's opinion significant weight, he should have also adopted all of Dr. Koenig's recommendations regarding limiting Petitioner's activities. *Petitioner's Brief*, pp. 16–17. (Docket No. 17). Additionally, Petitioner contends that the ALJ erred by failing to address the opinion evidence fo Dr. Frizzell. *Id.*

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, as treating physicians have a greater opportunity to observe the claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating

**MEMORANDUM DECISION AND ORDER - 25**

physician's opinion is normally entitled to deference, it is not necessarily determinant as to the question of disability. *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 (9th Cir. 1989). A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion are all sufficient reasons for rejecting an opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

      **a.**      <u>**Dr. Koenig**</u>

According to the record, the ALJ gave significant weight to the opinion of Dr Koenig as consistent with the record. (AR 25). Specifically, the ALJ notes that Dr. Koenig found "moderately severe degenerative arthritis of the right hip with a fracture extending in to the right hip joint and right lower back pain that limited his working ability to light duty activities." (AR 25). Petitioner opines, however, that the ALJ did not consider Petitioner's pain effects, that Petitioner's back pain was not addressed, and that the ALJ did not address limitations set out by Dr. Koenig, all of which were reversible error. (AR 17–18).

In assigning significant weight to Dr. Koenig's opinion, the ALJ found, consistent with the opinion of Dr. Koenig, that Petitioner was incapable of performing even moderate manual work activities. (AR 22–25). Likewise, the ALJ made findings that were consistent with the substantial evidence provided by Dr. Koenig. (AR 22–25). The record controverts Petitioner's allegation that the ALJ did not consider Petitioner's back pain, or overall pain, and their limiting effects on Petitioner's ability to work. Specifically, that ALJ notes that he examined the progress notes of Dr. Koenig regarding chronic right hip pain, back pain and medications. (AR 24 –25). Additionally, the ALJ's findings and conclusions are in-line with the opinions of Dr. Koenig. Specifically, the ALJ's RFC rating reflects, precisely, the opinions of Dr. Koenig with

**MEMORANDUM DECISION AND ORDER  - 26**

regard to the amount of time Petitioner can stand throughout the day, the necessity to be able to change positions, and the overall capacity for Petitioner to participate in only sedentary work. Finally, it is important to note that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Id.*; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). It is apparent that the ALJ fairly and accurately considered the opinion of Dr. Koenig in making his determination. No reversible error is found here.

       **b.**    **Dr. Tyler Frizzell**

There is an abundant amount of evidence in the record from Dr. Frizzell. (AR 121–56). However, the ALJ did not mention, let alone discount, the extensive evidence that Petitioner provided from Dr. Frizzell. Petitioner contends that this failure is reversible error. (AR 16–17). Respondent argues that this failure is harmless error.

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam). With regard to the medical evidence in the record, the ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). "An ALJ may not reject a treating doctor's opinion, even if contradicted by another doctor, without providing specific and legitimate reasons supported by substantial evidence in the record." *Kager v. Astrue*, 256 Fed.Appx. 919, 922 (9th Cir. 2007). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Kager v. Astrue*, 256 Fed.Appx. 919,

**MEMORANDUM DECISION AND ORDER  - 27**

922 (9th Cir. 2007) (*citing Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Thus, because no

summary of the evidence provided by Dr. Frizzell is in the record, error will be found if it is

determined that Dr. Frizzell's opinion was rejected or not considered by the ALJ.[9]

The record indicates that Dr. Frizzell stated, on September 4, 2001, that Petitioner

"would likely require changes in his restrictions after surgery. It is my opinion that he should

not be working at this time." (AR 143). Respondent claims that Dr. Frizzell was speaking only

to Petitioner's work as a semi-truck driver. *Respondent's Brief*, p. 12–13 (Docket No. 21).

Nothing in the record supports this contention. Likewise, the only conclusion the Court can

draw is that the opinion of Dr. Frizzell was not considered by the ALJ. This amounts to manifest

error on the part of the ALJ.

### 7. Decision Based on Substantial Evidence Supported by the Record

In order for the ALJ's disability determination to be upheld, the ALJ has the burden of

showing that his decision is based on substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418,

421 (9th Cir. 1988). "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings." *Id*. (*citing Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)). In this

regard, the ALJ concluded that Petitioner had not met his burden of proof regarding his claims of

---

[9] The Court is reluctant to find a second instance of harmless error in the same
determination. The ALJ has the clear duty to act as fact-finder, specifically including the
evaluation of physician opinions and determination of a claimant's potential listing. *See
Richardson v. Perales*, 402 U.S. 389 (1971). The limited role of the Court is only to ensure that
the "Secretary's findings are [not] based upon legal error [and] supported by substantial evidence
in the record as a whole." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). Decisions
based on multiple errors, harmless or otherwise, put the Court in the improper position of fact-
finder and promote remand or reversal based on cumulative error. *See Sherman v. Apfel*, 141
F.3d 1185 (10th Cir. 1988).

**MEMORANDUM DECISION AND ORDER  - 28**

disability due to an injury of the back, a hip injury and associated arthritis and a shotgun wound, a conclusion that, to be upheld, must be based on substantial evidence and supported by the record.[10]  (AR 16–25).

While the ALJ's determinations that Petitioner failed to meet the Listing requirements for Major Dysfunction of a Joint, § 1.02, Disorders of the Spine pursuant to § 1.04, Inflammatory Arthritis, § 14.09 and the combined effects of Petitioner's maladies are supported by substantial evidence, the RFC determination that Petitioner can perform sedentary work is not.  The medical reports of Dr. Frizzell state explicitly that Petitioner should not work.  (AR 143).  While the aggregate evidence provided by Dr. Frizzell does not conclusively controvert the position of the ALJ regarding his RFC determination, it does not directly support the determination either.  The failure of the ALJ to speak to this evidence is reversible error.

Further, as a result of this error, the ALJ did not properly indicate the outcome of steps four and five of the sequential process.  Accordingly, this Court cannot find that Petitioner is disabled and order the payment of benefits.  *See Harman v. Apfel*, 211 F.3d 1172, 1178–79 (9th Cir. 2000).  Rather, where "there are outstanding issues that must be resolved before a proper disability determination can be made," remand is appropriate.  *See Vasquez v. Astrue*, No. 06-16817, 2008 WL 4791860, at *7–*8 (9th Cir. 2008).

**C.**     **Conclusion**

With all of the foregoing in mind, this case is remanded to the Commissioner to necessitate the ALJ's consideration of Dr. Frizzell's reports as a treating physician.  Further, the

---

[10] In any claim for disability, the initial burden of proof rests upon the claimant.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).

**MEMORANDUM DECISION AND ORDER  - 29**

ALJ shall throughly review Dr. Frizzell's accounts, and reassess Petitioner's RFC, and make a complete accounting of the opinion of Dr. Frizzell.  Finally, the Commissioner shall direct the ALJ to reevaluate steps four and, if necessary, five of the sequential process.  Once that has been accomplished, the action may be returned to this Court for further proceedings, if necessary.

## V.

## ORDER

For the foregoing reasons, the Commissioner's determination is AFFIRMED IN PART and REVERSED IN PART, and this action if REMANDED for further proceedings as provided in the foregoing Memorandum Decision and Order.  On remand, the ALJ is directed to reassess Petitioner's RFC, including all of his relevant limitations.  The ALJ is further directed to reassess the step-four conclusion in light of Petitioner's complete RFC and this Memorandum Decision and Order, and if necessary, proceed to step five.

DATED:  **December 29, 2008**.



Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 30**